RIVERA, PETITIONER, v. DISTRICT COURT OF MAYAGÜEZ, RESPONDENT.

PETITION for a Writ of Certiorari to the District Court of Mayagüez, Hon. Angel Acosta Quintero, Judge.

No. 423.—Decided July 28, 1923.

VENUE—CHANGE OF VENUE.—It is an error to overrule summarily a motion by the defendant asking the court to summon for cross-examination the witnesses on whose testimony the district attorney relied in moving for a change of venue in a criminal case on the ground that a fair and impartial trial could not be had because the defendant was an influential politician.

The facts are stated in the opinion.

Mr. A. A. Vázquez for the petitioner.

Mr. José Figueras, Fiscal, for the respondent.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The district court, in granting a motion for change of venue presented by the district attorney, said:

"The court will decide this matter and will not base its ruling on the motion of the District Attorney for a change of venue on the fact that this case has been submitted on three occasions to a jury of the District Court of Mayagüez and that on those three occasions the petit jury to which it was submitted were unable to agree. A case may be submitted to a jury as often as necessary, if the government is of the opinion that there is evidence upon which to reach a verdict. The fact that a jury could not agree on three occasions does not mean that there was no evidence, but simply that the evidence was judged differently by the members of the jury, some of them believing that the defendant was guilty and others that he was innocent.

"The court bases its ruling on the verified motion of the District Attorney upon the affidavits accompanying the same, namely, affidavits of José López Palermo, corporal of Insular Police and District Chief of Mayagüez, and of Rafael Román Rivera, Insular Policeman. And the Court bases its decision of this case upon the counter affidavits submitted this day by the attorney for the defendant herein,

which affidavits are highly significant in that they are signed and sworn to, one by Manuel Marín, a well known politician of the city of Mayagüez who, himself, states that he was the president of the Republican Party in the election campaign of 1920, another by Juan Alemañy Sosa, an attorney practicing in this court, who personally states that he is the Vice-president of the Local Board of the Unionist Party of Porto Rico, and another by J. E. Lespier, also a prominent politician, since he personally states under oath that he was the President of the Unionist Party in the elections of 1917.

"Both the affidavits offered by the *fiscal* and the counter affidavits presented by the defence were made by residents of this city of Mayagüez, and after giving due weight to these affidavits and counter affidavits the court is convinced, satisfied and firmly persuaded, and assured beyond reasonable doubt of any kind, that the statements of the petitioner, that is, of the *fiscal* of this district court, are true, and that The People of Porto Rico is absolutely unable to obtain a fair and impartial trial in this judicial district or in the courts of the districts of Ponce, Aguadilla and Arecibo, in the proximity of the district of Mayagüez, where the influence and power of the defendant, Juan Rivera (a) Holandés, a well known political agitator of the city and district of Mayagüez, have made and are making themselves felt, and for such reasons and in view of the weight given the affidavits and counter affidavits by the court, and the provisions of Title VI, Chapter V of the Code of Criminal Procedure and the jurisprudence cited by the attorney for the defence and applicable to this case, in the Porto Rican and California Reports, Cyc. and Ruling Case Law, which the court has read and which have been cited, the Court orders and decrees that this case be transferred to the First District of the District Court for the Judicial District of San Juan, Porto Rico, to the proper legal ends.

The affidavits referred to are in substance as follows:

"Rafael Román Rivera: That he knows Juan Rivera (a) Juan Holandés, the defendant in the above entitled case, who is a well-known political agitator and protected by persons of great weight and influence in this community, who have succeeded in moulding the mind of the people in such a manner in favor of the defendant herein and against The People of Porto Rico that it would be impossible to hold a fair and impartial trial in this judicial district.

"That the influence of such persons would also extend to the judicial districts of Ponce, Aguadilla and Arecibo."

"José López Palermo: That he has known the defendant herein, Juan Rivera (a) Juan Holandés, for many years; that said defendant is an energetic political agitator and consequently exercises great influence among prominent people in this city; that public opinion has been formed in this case to such an extent that the question has become purely political, the community being divided as to the guilt of the defendant, not by reason of the facts themselves but according to the political connection of the individual.

"For these reasons I am of the opinion that a fair and impartial trial is not possible in this judicial district and that as a result of the influence exercised by the persons who favor the cause of the defendant in this case, it would likewise be impossible to obtain a fair and impartial trial in Aguadilla, Ponce and Arecibo."

"José Soto Rodríguez: That he has known the defendant herein, Juan Rivera (a) Juan Holandés, for many years and that said defendant is an energetic political agitator in this city; that affiant, observing that three consecutive trials have taken place in the above entitled case without a verdict, has learned that the reason therefor is the great influence exercised by defendant Juan Rivera (a) Juan Holandés among certain prominent persons in this city who have succeeded in predisposing the mind of the community in favor of the defendant in this case, affiant being therefore of the opinion that it is not possible to hold a fair and impartial trial in this judicial district and that such condition not only prevailed in this judicial district but also, as a result of the influence of the persons upholding the cause of Holandés, in the judicial districts of Aguadilla, Ponce and Arecibo."

Manuel Marín: "That for more than eighteen years he has resided continuously in the city of Mayagüez during all of which time he has been a member of the Republican Party, which is one of the most important political bodies.

"That he was the President of the said political party during the election campaign of 1920 and that at no time during such campaign was Juan Rivera (a) Holandés a political agitator in behalf of any of the principal parties; that said Rivera does not know how to read or write but is an honest workman who does not live off politics but by his personal labor, following the trade of cartman; that the Committee presided over by me never entrusted any political office to the said Holandés nor commissioned him to do anything that would make him a political agitator, since the said Holandés lacks the necessary qualifications for such a task.

"That in 1917 affiant took part in the election campaign of Mayagüez and that at no time was Juan Rivera (a) Holandés a political agitator in favor of any of the principal parties.

"That I am convinced that no person of political power in the party to which I belong in Mayagüez is supporting the said Juan Rivera (a) Holandés and I am also convinced that no such person exercises any political influence in Aguadilla, Ponce and Arecibo, much less the said Juan Rivera."

Juan Alemañy Sosa: "That I am the Vice-president of the Local Committee of the Unionist Party of Porto Rico in this city; that I have been a member of said Local Committee or Board during the last four years uninterruptedly, and still am; that I was a member during the years 1908, 1909 and 1910; that I have taken an active part in Unionist politics in this Island during the time that I have not been connected officially with the management of the said party; that I am an attorney practicing in the Insular courts of Porto Rico and have been for more than seven years; that I have known the defendant in this case, Juan Rivera (a) Holandés, for twenty-five years; that during all this time and up to the present I have known him to be in indigent circumstances, of humble station, and a cartman by trade; that said defendant has always been and apparently still is an elector of the Unionist Party of Porto Rico, being both honest and enthusiastic, since I have seen him on various occasions in political meetings and similar functions; that he has never been a political agitator, a political leader, or a ward representative, nor has the party ever entrusted him with a political or other mission; neither does he possess the necessary qualifications to act as a political agitator, since he is uneducated; that he does not know even how to read or write and is not surrounded by the proper atmosphere; that affiant is intimately acquainted with said defendant and knows his personal as well as social and political connections and is convinced that he is entirely unknown outside of this city of Mayagüez and that he has no knowledge, friendship or connection, and is absolutely unacquainted with anyone in Ponce or Arecibo; that said defendant is known to the political leaders of both parties in this city and especially to those of the Unionist Party of Porto Rico, which, however, is equally acquainted with three thousand other voters; that said defendant is charged with voluntary manslaughter in which no political question is involved and that affiant is informed and believes that the difficulty consists in the lack of government

witnesses, but that the political standing of the defendant has no bearing on the case; that defendant is also absolutely without any political influence to predispose any prominent person in his favor; that based upon the foregoing facts, affiant is informed and believes that The People of Porto Rico is able to obtain a fair and impartial trial of the case either in the judicial district of Mayagüez, Aguadilla, Ponce, Arecibo, or in any other judicial district of the Island.''

Edelmiro Lespier: ''That for more than eight years I have resided constantly in Mayagüez and during all that period have been connected with one of the principal political parties, Juan Rivera (a) Holandés being also one of the members of said Party.

''That affiant was the President of the said political party during the electioneering campaign of 1917 and that at no time during such campaign was Juan Rivera (a) Holandés a political agitator; that said Holandés, who is a cartman by trade, does not know how to read or write, being an honest man who works for his living and does not live off politics but by his personal labor. That the political committee presided over by me at no time entrusted any political job to the said Holandés nor gave him any commission that could make a political agitator out of him, as Holandés lacks the necessary qualifications therefor.

''That affiant took part in the electioneering campaign of 1920 in Mayagüez and that at no time during that campaign was Juan Rivera (a) Holandés a political agitator.

''That affiant is convinced that no person of political power belonging to the party in Mayagüez is backing the said Juan Rivera (a) Holandés and is further convinced that no such persons exercise political power in Aguadilla, Ponce and Arecibo and much less the said Juan Rivera.

''That I am convinced that during the electioneering campaign of 1917 as well as in that of 1920, José Soto Rodríguez, the present chief of the Insular Police, was not at Mayagüez.

''That according to information, which affiant believes to be true, the reason for the failure to obtain a verdict in the trial of Juan Rivera (a) Holandés for manslaughter is due to the lack of convincing proof on the part of the government and not to matters of a political nature, and the affiant avers that both in the District of Mayagüez and in the districts of Aguadilla, Ponce and Arecibo The People of Porto Rico and the defendant are in a position to hold and obtain a fair and impartial trial in this case.''

When served with a copy of the motion made by the *fiscal* and with copies of the affidavits in support thereof, counsel for defendant promptly moved that affiants be cited to appear at the hearing in order to afford an opportunity for cross-examination; and this motion was denied without any indication as to the reasons for such refusal.

At the threshold of the hearing on the motion for a change of venue, the court, of its own motion, very properly struck from the counter-motion filed by defendant certain scandalous matter imputing to the *fiscal* improper motives and acts. In so doing the judge, also very properly, took occasion to administer to counsel for defendant a severe rebuke. In the nature of things this incident could not have tended to soothe any feeling of personal animosity that had been aroused between counsel for the defense and the *fiscal*, although it may have served to clear the atmosphere of the court room and to reduce to a minimum the outward manifestations of the mental attitudes usually engendered in such circumstances.

That the righteous indignation of the court was not entirely exhausted in the elimination of the scandalous matters above mentioned, would seem to appear from certain traces of warmth in the extract first above quoted.

It is doubtless true that the affidavits of the local leaders in partisan politics should be regarded with some degree of caution. But when such leaders of both political parties agree, that circumstance should have some weight as tending to negative any presumptions of prejudice or bias that might otherwise exist.

We have heretofore indicated the propriety of permitting cross-examination in matters of this kind, when requested by a defendant. *Fajardo* v. *Soto Nusa*, 23 P. R. R., 71.

The existence or non-existence of such a situation as would prevent a fair and impartial trial is intrinsically a matter of opinion, the correctness of which necessarily de-

pends on the accuracy of the data upon which it is based. Hence the importance, in a doubtful case, of ascertaining the foundation upon which such opinion testimony rests.

In the instant case we cannot concur in the conclusion reached by the court below as to the sufficiency of the showing made by the *fiscal,* in the absence of such cross-examination and in the face of the counter-affidavits,—at least in so far as the adjoining districts of Aguadilla and Ponce are concerned.

The judgment appealed from must be reversed and the case remanded for further proceedings not inconsistent herewith.

*Reversed and remanded.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.